UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHRISTOPHER ARMIGER,

       Plaintiff,

v.                                  Case No:  2:13-cv-825-FtM-38CM

SOUTH TRAIL FIRE PROTECTION
& RESCUE SERVICE DISTRICT,

       Defendant.

_____/

## ORDER[1]

This matter comes before the Court on Defendant South Trail Fire Protection & Rescue Service District's Motion to Dismiss Plaintiff's Complaint (Doc. #10) filed on January 7, 2014. Plaintiff Christopher Armiger filed his Opposition to Defendant's Motion to Dismiss Complaint, or In the Alternative, for Leave to Amend (Doc. #19) on February 4, 2014. Thus, the Motion is ripe for review.

## BACKGROUND

Plaintiff Christopher Armiger ("Armiger") initiated this action by filing a two-count Complaint against Defendant South Trail Fire Protection & Rescue District ("the District") (Doc. #1) on November 25, 2013. The District is a subdivision of the State of Florida engaged in the business of firefighting, medical rescue control, and related services.

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

Armiger alleges he was employed by the District as a certified firefighter/paramedic EMT from 2004 until January 16, 2013.

The Complaint alleges that Armiger's superiors at the District included Fire Chief Bill Lombardo, Battalion Chief Brian Kirkland, Battalion Chief Payne, Deputy Chief Bengston, Assistant Chief Intartaglio, and Human Resources Administrator Don Laubheimer.  Armiger alleges Lombardo, Kirkland, Payne, Bengston, Intartaglio, and Laubheimer were agents of the District who at all relevant times had the authority or apparent authority to hire, promote, discipline, and fire employees.

In 2011, Armiger applied for a promotion to Lieutenant and Engineer.  When he applied for the Lieutenant's test, Bengston discouraged Armiger, opining that he was unqualified because he had only seven or eight years' tenure with the District. Nonetheless, Armiger took both the Lieutenant's test and the Engineer's test.  He alleges he met the objectives of both tests but did not score "in the 90s" like others with similar test responses.

The Complaint alleges Lombardo, Kirkland, Payne, Bengston, and Laubheimer manipulated the District's promotion testing process, engaged in acts of dishonesty, and declined to promote Armiger.  The Complaint alleges Intartaglio was present during the conduct complained of and declined to take any remedial action.

On October 1, 2011, Armiger informally reported the problems and defects in both tests and "was subjected to reprisal for making the reports." (Doc. #1, ¶ 18).  On October 14, 2011, he presented a formal complaint to Bengston, stating that the tests were defective.  Bengston declined to accept the complaint and in front of third parties, swore at Armiger and asserted that he was incapable or incompetent.  Armiger then presented

his complaint about the tests to Lombardo and Laubheimer on October 20, 2011, and Laubheimer stated he agreed with Bengston that Armiger was incompetent.  On January 31, 2011, the District declined to promote Armiger.

Armiger alleges that others were treated more favorably than he in connection with both the test scores and promotions.  The Complaint alleges the District improved Firefighter Timothy Alexander, Jr.'s test grade due to a supposed test error, despite Alexander's work performance being allegedly problematic and inferior to Armiger's. Armiger also alleges Firefighter Rubin Castro was treated more favorably than Armiger despite very serious infractions including driving a fire truck while intoxicated on more than one occasion.  Armiger also alleges that other similarly situated candidates were permitted "drive time" to practice for the Engineer's exam, but that Armiger was denied the same opportunity.

The Complaint further alleges that in late October 2012, Kirkland made public racist remarks and slurs concerning the Middle Eastern national origin of a Fire Marshall candidate.  Armiger vocally opposed those statements.  Two shifts later, on November 14, 2012, Armiger asked Kirkland to refrain from touching him and/or shouting at him during a group exercise.  Armiger was then placed on paid administrative leave for over two months, during which time he received a certified letter stating that he was being disciplined for falsely accusing Payne of discrimination four months earlier.

Armiger reported these allegations to Lombardo on December 26, 2012. Lombardo informed Armiger that he was terminated effective January 16, 2013, for reputedly challenging Lombardo's authority.  Armiger elected to resign in lieu of being fired.

Armiger alleges that according to policy and practice, the District should provide an employee with:  (1) a written warning that the employee is not performing his job duties competently; (2) a period of thirty (30) days to improve; and (3) a probationary period upon demonstration of partial improvement, absent some extreme violation of company policies or misconduct.  Armiger alleges he received none of these and that because Fire Commissioner Gaskill is Kirkland's father-in-law, this had a chilling effect on Armiger's ability to exercise his rights.

As a result, Armiger brings Count I for violation of 42 U.S.C. § 1983, alleging Lombardo, Kirkland, Payne, Bengston, Laubheimer, and Intartaglio, acting in their individual capacities and under a governmental custom or policy, deprived Armiger of his constitutional rights, including his due process and free speech rights.  Armiger brings Count II for defamation under Florida law, alleging the District and its agents repeated unprivileged false statements to a wide audience that portrayed Armiger unfavorably and were injurious to his professional reputation.

The District now moves to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim as required by Fed. R. Civ. P. 8.

## STANDARD OF REVIEW

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. Bedasee v. Fremont Inv. & Loan, No. 2:09-cv-111-FtM-29SPC, 2010 WL 98996 *1 (M.D. Fla. Jan. 6, 2010) (citing Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)); Christopher v. Harbury, 536 U.S. 403, 406, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002).  "To survive dismissal, the complaint's allegations must plausibly suggest that

the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." James River Ins. Co. v. Ground Down Engineering, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008) (citing Twombly, 550 U.S. at 555-56).  The former rule—that "[a] complaint should be dismissed only if it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief," La Grasta v. First Union Securities, Inc., 358 F.3d 840, 845 (11th Cir. 2004)—has been retired by Twombly.  James River Ins. Co., 540 F.3d at 1274.  Thus, the Court engages in a two-step approach:  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Iqbal, 129 S. Ct. at 1950.  Dismissal is warranted under Fed. R. Civ. P. 12(b)(6) if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief.  Bedasee, 2010 WL 98996 at *1 (citing Neitzke v. Williams, 490 U.S. 319, 326, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)); Brown v. Crawford County, 960 F.2d 1002, 1009-10 (11th Cir. 1992).

To satisfy the pleading requirements of Fed. R. Civ. P. 8, a complaint must simply give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, S. Ct. 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); Swierkiewicz v. Sorema N.A., 534 U.S.  506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002).  Although the pleading standard announced in Fed. R. Civ. P. 8 does not require "detailed factual allegations," it does demand more than an unadorned, "the-defendant-unlawfully-harmed-me accusation."  Sinaltrainal v. Coca-Cola Co., 578 F. 3d 1252, 1268 (11th Cir. 2009) (citing Ascroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)).  Furthermore, unwarranted deductions of fact in a complaint

are not admitted as true for the purpose of testing the sufficiency of the allegations. *Sinaltrainal*, 578 F.3d at 1268 (citing *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005)).  The facts as pled must state a claim for relief that is plausible on its face.  *Sinaltrainal*, 578 F.3d at 1268 (citing *Iqbal*, 129 S. Ct. at 1950).

## DISCUSSION

Defendant the District argues the Complaint fails to state a claim upon which relief can be granted pursuant to 42 U.S.C. § 1983 and slander under Florida law; the Complaint constitutes a shotgun pleading; and the District is immune from the alleged slander claim pursuant to Florida law.  The Court will address the shotgun pleading first and the remaining arguments in turn.

### (1) Whether the Complaint is a Shotgun Pleading

The District contends Armiger's Complaint is a shotgun pleading and that the District is unable to ascertain which facts support each Count. A shotgun pleading "incorporate[s] every antecedent allegation by reference into each subsequent claim for relief."  *Frantz v. Walled*, 513 F. App'x 815, 820 (11th Cir. 2013) (quoting *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006)).  In a shotgun complaint, "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief."  *Anderson v. Dist. Bd. of Trustee of Cent. Fl. Comm. Coll.*, 77 F.3d 364, 366 (11th Cir. 1996).  Defendants faced with such pleadings cannot and will not be expected to frame a responsive pleading.  *Id.*   "[U]nless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's

ability to administer justice." Id.  For this reason, shotgun complaints should be dismissed, allowing plaintiffs to re-plead their claims.  See Magluta v. Samples, 256 F.3d 1282, 1284-85 (11th Cir. 2001).

Armiger attempts to bring claims for violations of 42 U.S.C. § 1983 and defamation, but the grounds underlying the claims are unclear and speculative at best.  See Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955 (2008).  The Court has read Armiger's Complaint several times over and cannot determine which allegations are intended to support each claim.  The Complaint contains fifty-eight (58) disorganized factual allegations followed by two Counts that are each only one paragraph long, containing no factual or legal support.  The "complaint's failure to link factual allegations to specific counts makes it a quintessential shotgun pleading.  As such, it does not comply with Rule 8(a)," Frantz, 513 F. App'x at 821, and must be dismissed with leave to amend.

Typically the Court would dismiss the Complaint at this point for failure to state a claim to which the Defendant could respond, however, because the Defendant also addressed the merits of the Complaint the Court will review the merits as well.

(2)*Failure to State a Claim*

In addition to arguing that the Complaint is a shot gun pleading, the Defendant addresses the merits of the Count I Armiger's § 1983 claim, and Count II his claim for Defamation.

*Count I (42 U.S.C. § 1983)*

The District asserts that the Complaint alleges in a conclusory manner violations of Armiger's free speech and due process rights.  The District contends that although it is able to ascertain that Armiger is alleging violations of the First and Fourteenth

Amendments, it is unable to determine which constitutional rights the Complaint actually implicates. The District asserts that the First and Fourteenth Amendments do not provide the type of protections Armiger appears to be claiming, particularly because Armiger's allegations concern his employment with a governmental entity.

Armiger responds that he is alleging the District's supposed due process for employees seeking promotion did not afford qualified candidates the ability to avail themselves of promotional opportunities at all; it was a mere pretext for the District supervisors to select those they desired.

### (a) Free Speech Claim

Plaintiff appears to be alleging a free speech claim under the First Amendment regarding statements concerning his employment with the District, a governmental entity. The Supreme Court has stated "[e]ven though [individuals] work for the Government, they have not relinquished 'the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest.'" United States v. Nat'l Treasury Emp. Union, 513 U.S. 454, 465, 115 S. Ct. 1003, 130 L. Ed. 2d 964 (1995). A balance must be struck between the interests of an employee, as a citizen, in commenting upon matters of public concern, and the interest of the State, as an employer, in promoting the efficiency of the public services it performs. Pickering v. Bd. of Educ. of Tp. High Sch. Dist. 205, 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968).

The Eleventh Circuit has articulated a four-stage analysis for examining First Amendment retaliation claims:  (1) the court determines whether the employee's speech may be "fairly characterized as constituting speech on a matter of public concern"; (2) if the speech addresses a matter of public concern, the court weights the employee's first

amendment interests against those of the State; (3) if the employee prevails on the balancing test, the court determines whether the employee's speech played a "substantial part" in the dismissal of the employee; and (4) if the employee prevails in stage three, then the state must prove by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct. Bryson v. City of Waycross, 888 F.2d 1562, 1565-66 (1989). If the Court determines in stage one that the alleged speech was not on a matter of public concern, the inquiry ends there. Eggleston v. Bieluch, 203 F. App'x 257, 267 (11th Cir. 2006).

Thus, the Court begins with whether Armiger's speech addressed a matter of public concern. Speech addressing a matter of public concern is that which relates to "any matter of political, social, or other concern to the community." Connick v. Myers, 461 U.S. 138, 146 (1983). Challenges to general employment policies and decisions are of an internal nature and are not matters of public concern, particularly where the employee expresses his criticisms in his professional role rather than as a citizen. Eggleston, 203 F. App'x at 267. Matters involving promotion guidelines and grievance procedures are not matters of public concern, and therefore are not protected. Anderson v. Burke Cnty., Ga., 239 F.3d 1216, 1220 (11th Cir. 2001); Morris v. Crow, 142 F.3d 1379, 1380 (11th Cir. 1998).

The District contends the speech Armiger alleges involving the District's promotion testing procedure and reports to the Fire Chief involve the District's purported internal employment policies and decisions, and are therefore not matters of public concern. See Anderson, 239 F.3d at 1220; Morris, 142 F.3d at 1380. The District also contends Armiger does not have standing to bring a claim based on Kirkland's statement concerning

9

national origin because it was a single statement not directed at Armiger.  Moreover, the District argues that Armiger's alleged speech is not afforded First Amendment protection because it was expressed internally and only to District officers, thereby not constituting a public statement.

Armiger asserts the matters he reported were matters of public concern because they related to the hiring and promotion practices of a public entity.  In his Response, Armiger contends his Complaint alleges harm to the public safety because he calls into question whether qualified persons were hired and promoted at the District.  The Complaint, however, is devoid of such claims.  The Complaint does not allege that unqualified individuals were promoted or how Armiger's speech calls into question public safety.  Nor does the Complaint address how any of Armiger's alleged speech would otherwise be protected under the First Amendment.  Furthermore, the Complaint does not allege how Armiger's free speech rights were actually denied; it only states in a conclusory manner that his rights were violated, with no supporting allegations.  Thus, the Complaint does not give the District fair notice of what Armiger's First Amendment claim is and the grounds upon which it rests.  See Twombly, 550 U.S. at 555.

(b) *Fourteenth Amendment Due Process Claim*

The District next argues that the Complaint does not properly allege a Fourteenth Amendment violation because it does not specify whether Armiger is alleging a violation of substantive due process, procedural due process, or both.  The Due Process Clause of the Fourteenth Amendment protects both substantive and procedural due process.  Substantive due process protects "fundamental" rights that are "implicit in the concept of ordered liberty" and created by the United States Constitution.  Greenbriar Vill., L.L.C. v.

Mountain Brook, City, 345 F.3d 1258, 1262 (11th Cir. 2003) (citing McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994)). "Because employment rights are state-created rights and are not 'fundamental' rights created by the Constitution, they do not enjoy substantive due process protection." McKinney, 20 F.3d 1560. Therefore, because the Complaint concerns employment rights, it does not state a claim for violation of substantive due process under the Fourteenth Amendment. Employment rights instead are protected only by the procedural component of the Due Process Clause. Id.

A claim for deprivation of procedural due process must allege three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." J.R. v. Hansen, 736 F.3d 959, 965 (11th Cir. 2013) (citing Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003)); Miccosukee Tribe of Indians of Florida v. United States, 716 F.3d 535, 559 (11th Cir. 2013). To allege a deprivation of procedural due process with regard to continued employment, a plaintiff must first allege that he has a property right in his employment. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 105 S. Ct. 1487 (1985); McKinney, 20 F.3d at 1559-60. The Eleventh Circuit has held that "a prospective promotion is not a property or liberty interest protected by the fourteenth amendment." Wu v. Thomas, 847 F.2d 1480, 1485 (11th Cir. 1988). After the plaintiff has alleged a property interest in his employment, he must then allege that inadequate state procedures exist to remedy an alleged procedural deprivation. Cotton v. Jackson, 216 F.3d 1328, 1331 (11th Cir. 2000) ("procedural due process violations do not even exist unless no adequate state remedies are available").

In his Response, Armiger concedes that he did not have a property right in his continued employment or a constitutional right to a promotion or advancement. He

asserts instead that he had a right to be tested to demonstrate his qualification for a promotion and that he was denied that right.  The Complaint, however, alleges not only that Armiger was able to take both the Lieutenant's test and the Engineer's test, but that he achieved the objectives of both.  The Complaint then alleges merely that others who achieved superior scores, and therefore presumably more qualified, were promoted.  Furthermore, Armiger alleges that he employed both the informal and formal avenues afforded employees to redress discrimination and other concerns.  Although he alleges these were procedures in name only, the Complaint alleges that at least two of Armiger's grievances were successfully redressed through those procedures.  Armiger's allegations do not demonstrate a violation of Due Process; they show that Armiger was tested, did not perform as well as other applicants, and when he was not promoted, his superiors refused to reconsider their testing standards.  Therefore, the Complaint fails to state a claim upon which relief may be granted under the Fourteenth Amendment.

(c) <u><em>Defamation Claim</em></u>

The District next contends that Armiger's defamation allegation does not state a claim pursuant to the Fourteenth Amendment because injury to reputation does not itself constitute a liberty or property interest deprivation.  See Paul v. Davis, 424 U.S. 693, 701, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976).  To claim deprivation based on defamation by the government, a plaintiff must establish the fact of defamation plus the violation of some more tangible interest.  Cannon v. City of West Palm Beach, 250 F.3d 1299, 1302 (11th Cir. 2001).  A discharge or more satisfies this "stigma-plus" requirement, but denial of a promotion is not enough.  Id. at 1301.  The District asserts that Armiger's allegation is simply that his firing occurred in front of his peers and professional associates.

Not only is it unclear from the Complaint whether Armiger is alleging a defamation claim under the Fourteenth Amendment, but the Complaint also does not allege what was said or who Armiger's "peers and professional associates" were.   Thus, Armiger's defamation allegations do not state a claim for deprivation of procedural due process under the Fourteenth Amendment.

The District asserts the Complaint fails to allege the District had a custom or policy that constituted deliberate indifference to Armiger's First and Fourteenth Amendment rights and that the policy or custom caused the violation of said rights.   In order to establish Section 1983 liability, a plaintiff must allege he has been deprived of his constitutional rights by either an express policy or a widespread practice that is so permanent and well-settled that it constitutes a custom and usage with the force of law. Cuesta v. Sch. Bd. of Miami-Dade Cnty., 285 F.3d 962, 966 (11th Cir. 2002).  The "official policy or custom must be 'the moving force of the constitutional violation' in order to establish liability of a government body under § 1983."  Gilmere v. Atlanta, 737 F.2d 894, 901 (11th Cir. 1984) (quoting Polk Cnty. v. Dodson, 454 U.S. 312, 102 S. Ct. 445, 454, 70 L. Ed. 2d 509 (1981)).

Armiger's Complaint contains a single specific allegation regarding a custom or policy:  "According to policy and practice, the District will provide an employee who is not performing his or her job duties competently with a written warning, a period of thirty days to improve, and a probationary period upon demonstration of partial improvement, absent some extreme violation of company policies or misconduct."  (Doc. #1, ¶ 52).  Even though Armiger alleges he received none of these, the Complaint does not allege that the policy involved deliberate indifference to Armiger's First or Fourteenth Amendment rights;

in fact, the Complaint appears to insinuate the opposite.  The few other references to a "governmental custom or policy" are vague, conclusory, and bear no relation to Armiger's Section 1983 claim.  The Complaint lacks allegations that the District's policy was the moving force behind the alleged violation of his constitutional rights.

(d) *Respondeat Superior*

Finally with regard to Count I, the District asserts that Armiger's allegations appear to rest on the theory of *respondeat superior*; however, the Supreme Court has stated that Section 1983 "cannot be easily read to impose liability vicariously on governing bodies solely on the basis of the existence of an employer-employee relationship with a tortfeasor."  Monell v. Dept. of Soc. Serv. of City of New York, 436 U.S. 658, 692, 98 S. Ct. 2018 (1978); Bd. of Cnty. Cm'rs of Bryan Cnty. Okl. v. Brown, 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997).  The allegations in the Complaint appear to rest solely on the theory of *respondeat superior*, imposing liability on the District for the actions of Lombardo, Kirkland, Payne, Bengston, Intartaglio, and Laubheimer.  The Complaint does not allege why or how the District should be liable under 42 U.S.C. § 1983, other than for the wrongdoing of its employees.  Therefore, Count I of the Complaint fails to state a claim as required by Fed. R. Civ. P. 8.

*Count II (Defamation)*

The District next asserts that Armiger's Complaint does not state a claim for slander under Florida law because it fails to allege facts establishing that the District published a false statement about Armiger to a third party and that the falsity of the statement caused injury to Armiger.  The District contends Armiger has not alleged any statement at all, whether true or false.

Under Florida law, defamation consists of two separate causes of action:  libel and slander.  Libel is defamation expressed in print.  Cooper v. Miami Herarld Pub. Co., 31 So. 2d 382, 384 (Fla. 1974).  "Slander is a spoken or oral defamation of another which is published to others and which tends to damage that person's reputation, ability to conduct that person's business or profession, and which holds that person up to disgrace and humiliation."  Scott v. Busch, 907 So. 2d 662, 666 (Fla. Dist. Ct. App. 2005).  In either cause of action, defamation has five elements:  "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory."  Jews for Jesus, Inc. v. Rapp, 997 So. 2d 1098, 1106 (Fla. 2008).

Defamatory language classically includes language charging a person with a crime or tending to subject him to hatred, distrust, ridicule, contempt, or disgrace.  Scobie v. Taylor, No. 13-60457-Civ, 2013 WL 3776270, at *2 (S.D. Fla. July 17, 2013) (citing Rubin v. U.S. New & World Report, Inc., 271 F.3d 1305 (11th Cir. 2001)).  Additionally, defamatory language includes that which "tend[s] to injure a person in [his] office, occupation, business, or employment and which in natural and proximate consequence will necessarily cause injury," or that which "imputes to another conduct, characteristics, or a condition incompatible with the proper exercise of his lawful business, trade, profession or office."  Id. (quoting Metropolis Co. v. Crosadell, 199 So. 568, 569 (Fla. 1941)) (alterations in original).  Courts have found defamation where statements were made about a person's professional competence with regard to his current employment, but not where statements were made about fitness for a potential promotion.  See e.g.

Glynn v. City of Kissimmee, 383 So. 2d 774, 775-76 (Fla. Dist. Ct. App. 1980); Leavitt v. Cole, 291 F. Supp. 2d 1338 (M.D. Fla. 2003); Thompson v. Orange Lake Country Club, Inc. 224 F. Supp. 2d 1368, 1381 (M.D. Fla. 2002).

It is unclear what language Armiger is alleging as defamatory.  The only specific statement mentioned in the Complaint is that made by Bengston that Armiger was "incapable or incompetent."  (Doc. #1, ¶ 21).  This statement was not made with regard to Armiger's current employment; rather, it concerned his application for a potential promotion and therefore does not qualify as an actionable defamatory statement. Additionally, although the Complaint alleges this statement was made in front of third parties, there is no indication of who those persons were, that any of those persons heard the statement, that it was otherwise published, or that Armiger's reputation was actually damaged as a result.

The District further asserts that dismissal of Count II is warranted because the District is immune from the alleged slander claim.   Fla. Stat. § 768.28(9)(a) provides sovereign immunity to state agencies from vicarious liability for certain torts of its employees:

> The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a).  Florida courts have interpreted this Section to mean that in any situation, either the agency can be held liable or the employee, but not both.  See e.g. Johnson v. State Dept. of Health & Rehabilitative Servs., 695 So. 2d 927, 930 (Fla. Dist. Ct. App. 1997).  If the employee committed a tort:  (1) outside the scope of his employment; (2) in bad faith or with malicious purpose; or (3) in a manner exhibiting

16

wanton and willful disregard of human rights, safety, or property, then the employee will be personally liable for the tort; otherwise, the state or subdivision will be liable. Fla. Stat. § 768.28(9)(a).

The Complaint alleges multiple times that the behavior of Lombardo, Kirkland, Payne, Bengston, Intartaglio, and Laubheimer was malicious. (Doc. #1, ¶¶ 47, 60, 62). Nonetheless, Armiger brings his Complaint against the District, a state agency, rather than the individuals who allegedly committed the malicious wrongdoing. The Florida Statute is clear that a state agency will not be vicariously liable for the malicious torts of its employees. See Fla. Stat. § 768.28(9)(a); Johnson, 695 So. 2d at 930. Thus, Armiger's claim for defamation brought against the District is improper. Count II of the Complaint is dismissed for failure to state a claim upon which relief may be granted.

## CONCLUSION

In conclusion, the Court is unable to determine precisely what Armiger is attempting to allege or which facts are relevant to each count. The Court finds that the Complaint does not state a claim for relief as required by Fed. R. Civ. P. 8. See Sinaltrainal, 578 F.3d at 1268 (citing Iqbal, 129 S. Ct. at 1950). The Complaint does not give the District fair notice of what Armiger's claims are and the grounds upon which they rest and as such, the Complaint is a shotgun pleading and due to be dismissed as such.

Furthermore, the Complaint provides a series of conclusory allegations that Armiger attempts to use as support for his claims of First and Fourteenth Amendment violations and defamation. Consequently, the Complaint is dismissed without prejudice and Armiger is granted leave to file an Amended Complaint.

Accordingly, it is now

**ORDERED:**

(1) Defendant South Trail Fire Protection & Rescue Service District's Motion to Dismiss Plaintiff's Complaint (Doc. #10) is **GRANTED**.

(2) Plaintiff Christopher Armiger's Complaint is **DISMISSED without prejudice**.

(3) Plaintiff is granted leave to file an Amended Complaint within **twenty-one (21) days** of the date of this Order.

**DONE** and **ORDERED** in Fort Myers, Florida this 9th day of May, 2014.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record