UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHRISTOPHER ARMIGER,

      Plaintiff,

v.                            Case No:   2:13-cv-825-FtM-38CM

SOUTH TRAIL FIRE PROTECTION
& RESCUE SERVICE DISTRICT,

      Defendant.

_____/

## ORDER[1]

      This matter comes before the Court on the Defendant, South Trail Fire Protection & Rescue Service District's Motion to Dismiss with Prejudice Plaintiff's Amended Complaint (Doc. #36) filed on August 7, 2014.  The Plaintiff, Christopher Armiger filed his Response in Opposition (Doc. #39) on August 11, 2014.  The Motion to Dismiss is now fully briefed and ripe for the Court's review.

## FACTS

      Plaintiff Christopher Armiger ("Armiger") initiated this action by filing a two-count Complaint against Defendant South Trail Fire Protection & Rescue District ("the District") (Doc. #1) on November 25, 2013. The District is a subdivision of the State of Florida

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

engaged in the business of firefighting, medical rescue control, and related services. Armiger alleges he was employed by the District as a certified firefighter/paramedic EMT from 2004 until January 16, 2013.

The Court dismissed the initial Complaint on May 9, 2014, without prejudice finding that it was "unable to determine precisely what Armiger is attempting to allege or which facts are relevant to each count. The Court found that the Complaint did not state a claim for relief as required by Fed. R. Civ. P. 8." Armiger filed an Amended Complaint (Doc. #31) on June 5, 2014.

The Amended Complaint alleges the same two (2) Counts which were dismissed in the original Complaint: Armiger's superiors at the District included Fire Chief Bill Lombardo, Battalion Chief Brian Kirkland, Battalion Chief Payne, Deputy Chief Bengston, Assistant Chief Intartaglio, and Human Resources Administrator Don Laubheimer violated his constitutional rights to procedural due process and free speech and violated Florida's defamation law.  Armiger alleges Lombardo, Kirkland, Payne, Bengston, Intartaglio, and Laubheimer were agents of the District who at all relevant times had the authority or apparent authority to hire, promote, discipline, and fire employees.

In 2011, Armiger applied for a promotion to Lieutenant and Engineer.  When he applied for the Lieutenant's test, Bengston discouraged Armiger, opining that he was unqualified because he had only seven or eight years' tenure with the District. (Doc. #31, ¶16).  Nonetheless, Armiger took both the Lieutenant's test and the Engineer's test.  He alleges he met the objectives of both tests but did not score "in the 90s" like others with similar test responses.  (Doc. #31, ¶17-19).

The Complaint alleges Lombardo, Kirkland, Payne, Bengston, and Laubheimer manipulated the District's promotion testing process, engaged in acts of dishonesty, and declined to promote Armiger. (Doc. #31, ¶14-20).  The Complaint alleges Intartaglio was present during the conduct complained of and declined to take any remedial action.

On October 1, 2011, Armiger informally reported the problems and defects in both tests and states he "was subjected to reprisal for making the reports."  (Doc. #31, ¶20).  On October 14, 2011, he presented a formal complaint to Bengston, stating that the tests were defective.  Bengston declined to accept the complaint and in front of third parties, allegedly swore at Armiger and asserted that he was incapable or incompetent. (Doc. #31, ¶24).  Armiger then presented his complaint about the tests to Lombardo and Laubheimer on October 20, 2011, and Laubheimer stated he agreed with Bengston that Armiger was incompetent. (Doc. #31, ¶25-26).  On January 31, 2011, the District declined to promote Armiger. (Doc. #31, ¶19).

Armiger alleges that others were treated more favorably than he in connection with both the test scores and promotions.   The Complaint alleges the District improved Firefighter Timothy Alexander, Jr.'s test grade due to a supposed test error, despite Alexander's work performance being allegedly problematic and inferior to Armiger's. (Doc. #31, ¶42).   Armiger also alleges Firefighter Rubin Castro was treated more favorably than Armiger despite very serious infractions including driving a fire truck while intoxicated on more than one occasion. (Doc. #31, ¶43).  Armiger also alleges that other similarly situated candidates were permitted "drive time" to practice for the Engineer's exam, but that Armiger was denied the same opportunity. (Doc. #31, ¶44).  Armiger says

he was also denied permission to practice for the Engineer's exam a month earlier while working in the A shift. ([Doc. #31](), ¶45).

Armiger states that in July of 2012, he presented his concerns to the Fire Commission over the public safety not being served by a highly irregular testing process and the alleged reprisals he was receiving from his superiors, including Chief Payne, for complaining of the same—as Payne was preventing him from securing drive time to practice for the Engineer's exam. ([Doc. #31](), ¶48).  Armiger states the Fire Commission took no action on his complaints. ([Doc. #31](), ¶48).

The Complaint further alleges that in late October 2012, Kirkland made public racist remarks and slurs concerning the Middle Eastern national origin of a Fire Marshall candidate. ([Doc. #31](), ¶52).  Armiger vocally opposed those statements. ([Doc. #31](), ¶52-53).  Two shifts later, on November 14, 2012, Armiger asked Kirkland to refrain from touching him and/or shouting at him during a group exercise. ([Doc. #31](), ¶54). Armiger was then placed on paid administrative leave for over two months, during which time he received a certified letter stating that he was being disciplined for falsely accusing Payne of discrimination four months earlier. ([Doc. #31](), ¶54).

Armiger reported these allegations to Lombardo on December 26, 2012.  Chief Lombardo told Armiger that it was not his place to determine how drive time was determined. ([Doc. #31](), ¶60).  Lombardo informed Armiger that he was terminated effective January 16, 2013, for reputedly challenging Lombardo's authority. ([Doc. #31](), ¶61).  Armiger elected to resign in lieu of being fired. ([Doc. #31](), ¶61).

Armiger alleges that according to policy and practice, the District should provide an employee with:  (1) a written warning that the employee is not performing his job duties

competently; (2) a period of thirty (30) days to improve; and (3) a probationary period upon demonstration of partial improvement, absent some extreme violation of company policies or misconduct.  Armiger alleges he received none of these and that because Fire Commissioner Gaskill is Kirkland's father-in-law, this had a chilling effect on Armiger's ability to exercise his rights.

As a result, Armiger brings Count I for violation of 42 U.S.C. § 1983, alleging Lombardo, Kirkland, Payne, Bengston, Laubheimer, and Intartaglio, acting in their individual capacities and under a governmental custom or policy, deprived Armiger of his constitutional rights, including his due process and free speech rights.  Armiger brings Count II for defamation under Florida law, alleging the District and its agents repeated unprivileged false statements to a wide audience that portrayed Armiger unfavorably and were injurious to his professional reputation.

The District now moves to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim as required by Fed. R. Civ. P. 8.

## STANDARD OF REVIEW

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. Bedasee v. Fremont Inv. & Loan, No. 2:09-cv-111-FtM-29SPC, 2010 WL 98996 *1 (M.D. Fla. Jan. 6, 2010) (citing Erickson v. Pardus, 551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007)); Christopher v. Harbury, 536 U.S. 403, 406, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002).  "To survive dismissal, the complaint's allegations must plausibly suggest that the [plaintiff] has a right to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed."  James River Ins. Co. v. Ground

Down Engineering, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544-70 (2007).  The former rule—that "[a] complaint should be dismissed only if it appears beyond doubt that the plaintiffs can prove no set of facts which would entitle them to relief," La Grasta v. First Union Securities, Inc., 358 F.3d 840, 845 (11th Cir. 2004)—has been retired by Twombly.  James River Ins. Co., 540 F.3d at 1274. Thus, the Court engages in a two-step approach:  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Iqbal, 129 S. Ct. at 1950.  Dismissal is warranted under Fed. R. Civ. P. 12(b)(6) if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief.  Bedasee, 2010 WL 98996 at *1 (citing Neitzke v. Williams, 490 U.S. 319, 326, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989)); Brown v. Crawford County, 960 F.2d 1002, 1009-10 (11th Cir. 1992).

To satisfy the pleading requirements of Fed. R. Civ. P. 8, a complaint must simply give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, S. Ct. 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). Although the pleading standard announced in Fed. R. Civ. P. 8 does not require "detailed factual allegations," it does demand more than an unadorned, "the-defendant-unlawfully-harmed-me accusation." Sinaltrainal v. Coca-Cola Co., 578 F. 3d 1252, 1268 (11th Cir. 2009) (citing Ascroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009)). Furthermore, unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of the allegations.

Sinaltrainal, 578 F.3d at 1268 (citing Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005)). The facts as pled must state a claim for relief that is plausible on its face. Sinaltrainal, 578 F.3d at 1268 (citing Iqbal, 129 S. Ct. at 1950).

## DISCUSSION

The District moves to dismiss Armiger's Amended Complaint arguing the Amended Complaint is a shotgun pleading; Plaintiff failed to state a claim for relief under § 1983; and the District is immune from slander under Florida law.

### (1) Whether Amended Complaint is a Shotgun Pleading

A shotgun pleading "incorporate[s] every antecedent allegation by reference into each subsequent claim for relief." Frantz v. Walled, 513 F. App'x 815, 820 (11th Cir. 2013) (quoting Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1279 (11th Cir. 2006)). In a shotgun complaint, "it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." Anderson v. Dist. Bd. of Trustee of Cent. Fl. Comm. Coll., 77 F.3d 364, 366 (11th Cir. 1996). Defendants faced with such pleadings cannot and will not be expected to frame a responsive pleading. Id. "[U]nless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." Id. For this reason, shotgun complaints should be dismissed, allowing plaintiffs to re-plead their claims. See Magluta v. Samples, 256 F.3d 1282, 1284-85 (11th Cir. 2001).

The District claims Armiger's Amended Complaint is a shotgun pleading.  The Court found that the original complaint was a shotgun pleading because Armiger

incorporated every factual paragraph into each claim and then only made a generalized claim in a single paragraph without a factual basis to support same.

In Count I, Armiger  makes two (2) separate claims for constitutional violations. He claims a First Amendment free speech violation and a Fourteenth Amendment due process violation.  As such, Count I does not comply with Fed. R. Civ. P. 10.  Rule 10 requires that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded upon on a separate transaction or occurrence– and each defense other than a denial– must be stated in a separate count or defense.

Fed. R. Civ. P. 10(b).  While Armiger does reduce the number of factual paragraphs incorporated into Count I—incorporating sixty-five (65) of the seventy-eight (78) paragraphs—he still mixes two (2) constitutional claims into the one (1) count.  Such mixing of claims makes it impossible for the Defendant to form a defense to Count I because the District cannot tell where one claim begins and ends versus the other claim nor can the District be sure which facts apply to which Constitutional claim.  Pursuant to Fed. R. Civ. P. 10, each claim must be stated in a separate count.  Although Count I of the Amended Complaint is somewhat better organized, it is still a shotgun pleading and therefore, due to be denied as such.

Count II is essentially the same paragraph from the initial Complaint except in this case Armiger broke the paragraph down into numbered sentences and cited to only thirty-nine (39) of the seventy-eight (78) paragraphs of facts in the Amended Complaint.  Thus, Count II is sufficient at this point to enable the District to file a response.

Because the Court addressed the merits in its Order Dismissing the original Complaint, the Court will also address the merits in the Amended Complaint.

*(2) Count I*

Armiger claims he did not receive his Fourteenth Amendment right to due process in regarding the District's examination and promotion process and that he was denied his First Amendment right to free speech.   He claims that he has a due process right to be tested to demonstrate his acumen for promotion.  Armiger's claims lack merit.

*(a) Fourteenth Amendment Due Process Claim*

Armiger claims that he was denied due process in the testing and promotion process used by the District.  The Due Process Clause of the Fourteenth Amendment protects both substantive and procedural due process. Substantive due process protects "fundamental" rights that are "implicit in the concept of ordered liberty" and created by the United States Constitution. Greenbriar Vill., L.L.C. v. Mountain Brook, City, 345 F.3d 1258, 1262 (11th Cir. 2003) (citing McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994)). "Because employment rights are state-created rights and are not 'fundamental' rights created by the Constitution, they do not enjoy substantive due process protection." McKinney, 20 F.3d 1560. Therefore, because the Complaint concerns employment rights, it does not state a claim for violation of substantive due process under the Fourteenth Amendment. Employment rights instead are protected only by the procedural component of the Due Process Clause. Id.

A claim for deprivation of procedural due process must allege three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." J.R. v. Hansen, 736 F.3d 959, 965 (11th Cir.

2013) (citing Grayden v. Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003)); Miccosukee Tribe of Indians of Florida v. U.S., 716 F.3d 535, 559 (11th Cir. 2013). To allege a deprivation of procedural due process with regard to continued employment, a plaintiff must first allege that he has a property right in his employment. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 105 S. Ct. 1487 (1985); McKinney, 20 F.3d at 1559-60. After the plaintiff has alleged a property interest in his employment, he must then allege that inadequate state procedures exist to remedy an alleged procedural deprivation. Cotton v. Jackson, 216 F.3d 1328, 1331 (11th Cir. 2000) ("procedural due process violations do not even exist unless no adequate state remedies are available").

Armiger's claim centers around the fact that he did not get promoted over others he claims were less qualified.  As noted above, to allege a deprivation of procedural due process with regard to continued employment, a plaintiff must first allege that he has a property right in his employment. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538, 105 S. Ct. 1487 (1985); McKinney, 20 F.3d at 1559-60. The Eleventh Circuit has held that "a prospective promotion is not a property or liberty interest protected by the fourteenth amendment." Wu v. Thomas, 847 F.2d 1480, 1485 (11th Cir. 1988). Here, Armiger fails to establish the first element of a procedural due process claim because he does not have a property right nor a liberty interest in a prospective promotion. Id.

Armiger also claims that he was denied due process because there were no procedural remedies offered for his alleged deprivations.  Armiger argues that the procedures used by the District such as the examination used for promotion and employee grievance forums provided due process in name only.  Contrary to Armiger's assertions he was allowed to take the lieutenant's examination and acknowledges that

he did not score as high—in the nineties (90s)—as some of the other test takers.  Armiger never alleges that he was given a different or more difficult exam.  Armiger does take issue with how some of the other examinations were graded arguing they received higher grades because they were graded on a more lenient standard.

Armiger was allowed to dispute the test results through the District's chain of command taking his grievances formally and informally to Fire Chief Lombardo, the Human Resources Director, Laubheimer, Deputy Chief, Bengstrom, Training Lieutenant, Rogers, and the District's Commission. (Doc. #31, ¶¶6-7,11, 13, 20, 22, 25, 48, 60).  In fact, Armiger even acknowledges that two (2) of his grievances over the alleged employment issues were granted. (Doc. #31, ¶47).  Since the District provided Armiger with due process procedures, he fails to state a claim of denial of procedural due process. Cotton, 216 F.3d at 1331("procedural due process violations do not even exist unless no adequate state remedies are available").

Furthermore, the Florida Courts possess the power to remedy Armiger's claim both in terms of any alleged damages and equitable relief.  As such, the State of Florida has procedures in place that satisfy procedural due process and alleviate any deprivations Armiger may have suffered at the hands of the District. McKinney v. Pate, 20 F. 3d 1550, 1564 (11th Cir. 1994) (holding that McKinney would not suffer a procedural deprivation, of his due process rights unless and until the State of Florida refused to make available a means to remedy the deprivation); May v. City of Tampa, 2013 WL 4055854 * 4 (M.D. Fla. August 12, 2013)("[b]ecause an adequate and available procedural remedy exists under the law of Florida, no claim for denial of procedural due process can exist.").  Armiger failed to take advantage of any state remedies, opting instead to pursue his

claims in federal court.   Armiger had significant procedural due process opportunities provided by the District which he in fact used—he was successful with two (2) of his claims—as well as remedies provided by the State of Florida through its court system. Thus, Armiger fails to state a claim for procedural due process and his claim that the District violated his procedural due process rights is due to be denied.

(b) *First Amendment Free Speech*

Armiger states that he was deprived of his First Amendment right to free speech because the matters he reported were matters of public concern. The District argues that Armiger's alleged speech is not afforded First Amendment protection because it was expressed internally and only to District officers, thereby not constituting a public statement.

The Supreme Court has stated "[e]ven though [individuals] work for the Government, they have not relinquished 'the First Amendment rights they would otherwise enjoy as citizens to comment on matters of public interest.'" United States v. Nat'l Treasury Emp. Union, 513 U.S. 454, 465, 115 S. Ct. 1003, 130 L. Ed. 2d 964 (1995). A balance must be struck between the interests of an employee, as a citizen, in commenting upon matters of public concern, and the interest of the State, as an employer, in promoting the efficiency of the public services it performs. Pickering v. Bd. of Educ. of Tp. High Sch. Dist. 205, 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968).

The Eleventh Circuit has articulated a four-stage analysis for examining First Amendment retaliation claims: (1) the court determines whether the employee's speech may be "fairly characterized as constituting speech on a matter of public concern"; (2) if the speech addresses a matter of public concern, the court weighs the employee's first

amendment interests against those of the State; (3) if the employee prevails on the balancing test, the court determines whether the employee's speech played a "substantial part" in the dismissal of the employee; and (4) if the employee prevails in stage three, then the state must prove by a preponderance of the evidence that it would have reached the same decision even in the absence of the protected conduct. Bryson v. City of Waycross, 888 F.2d 1562, 1565-66 (1989). If the Court determines in stage one that the alleged speech was not on a matter of public concern, the inquiry ends there. Eggleston v. Bieluch, 203 F. App'x 257, 267 (11th Cir. 2006).

The initial issue is whether or not Armiger's speech addressed a matter of public concern.  Speech addressing a matter of public concern is that which relates to "any matter of political, social, or other concern to the community." Connick v. Myers, 461 U.S. 138, 146 (1983). Challenges to general employment policies and decisions are of an internal nature and are not matters of public concern, particularly where the employee expresses his criticisms in his professional role rather than as a citizen. Eggleston, 203 F. App'x at 267. Matters involving promotion guidelines and grievance procedures are not matters of public concern, and therefore are not protected. Anderson v. Burke Cnty., Ga., 239 F.3d 1216, 1220 (11th Cir. 2001); Morris v. Crow, 142 F.3d 1379, 1380 (11th Cir. 1998).

Armiger alleges that Lombardo, Kirkland, Payne, Bengstrom, Rogers, Intartaglio, and Laubheimer retaliated against him for exercising his free speech rights concerning the District's employment practices.  Armiger contends that the District's policies, as enforced by the above, were not in the best interest of the public, were discriminatory and were contrary to public safety. (Doc. #31, ¶64). Armiger further alleges that he was

speaking as a private concerned citizen in regards to public matters to raise awareness of a failure to hire and promote qualified candidates and to serve the public interest from a safety standpoint. (Doc. #31, ¶ 81).

In his Amended Complaint, Armiger's comments are directly related to his personal advancement and to his desire to improve his score on the promotional exam.   Armiger's allegations involve the District's promotion testing procedure, internal scheduling regarding who receives and who does not receive drive time, and complaints that he was not being allowed study time to prepare for the promotional exam. (Doc. #31, ¶¶ 11, 14-15, 17, 19-20, 22, 25, 28, 38, 48, 64, 69, 82, and 86).

As noted above, matters involving promotion guidelines and grievance procedures are not matters of public concern, and are not protected. *See* Anderson, 239 F.3d at 1220; Morris, 142 F.3d at 1380.   Armiger was told the same in the Court's previous Order dismissing the original Complaint, yet he filed the same allegation again in the Amended Complaint.   Armiger's Amended Complaint does not contain matters of public concern but personnel matters involving the Districts promotional and personnel decisions.   In sum, Armiger's statements were made in the context of Armiger's own desire to receive the promotion that others obtained instead of him and are therefore not matters of public concern.

Armiger also contends that he was offended by a statement made by Battalion Chief Kirkland concerning the national origin of another applicant.  Armiger states that he informed Kirkland he was offended by the comment and that by speaking out against the statement, Kirkland retaliated against his right to free speech.

As noted in the Court's original Order dismissing the case (Doc. #27, p.10), this one offensive reference to the national origin of another individual was insufficient to state a cause of action for violation of free speech.  Armiger did not publish the comment that he opposed Chief Kirkland's statement to the public at large. The Amended Complaint states that Armiger told Chief Kirkland politely; that the remarks were inappropriate in his opinion and that they embarrassed and offended him." (Doc. #31, ¶53).

It is clear from the Amended Complaint that Armiger's opposition to the alleged racial statement made by Chief Kirkland was made in private or before a few District employees.  He further made the comments to Kirkland as an employee of the District regarding a District personnel matter and not as part of the public dialogue.  Speech is more likely entitled to protection when it is made by part of a public dialogue. Perry v. Sindermann, 408 U.S. 593, 598, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972); Abad v City of Marathon, FL, 472 F. Supp. 2d 1374, 1379 (S.D. Fla. February 8, 2007) (stating that public discussion is more likely to be found to qualify for protection, as statements made as a private citizen, rather than an employee).  Thus, Armiger's right to free speech was not impinged by the District due to his comments to Chief Kirkland.

Finally, Armiger peppers the Amended Complaint with the assertion that his statements were made in the public interest or in the interest of public safety.  However, merely making conclusory statements that speech is made in the public interest without the factual basis to support such a claim fails to comply with the standard Supreme Court announced in Bell Atlantic Corp. v. Twombly, 550 U.S. 544-70 (2007).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a  plaintiff's obligation to provide the "grounds" of his "entitlement" to relief requires more

than labels, conclusions, and a formulaic recitation of the cause of actions elements. Id. at 561- 563.

In the Amended Complaint, Armiger complains about not being afforded "drive time," or time to practice for the exam, while he complains that others were allowed drive time and received lenient adjustments to their lieutenants' exam final grade. (Doc. #31, ¶¶14-15, 17, 19-20, 22, 25, 28, 38, 39-45, 47-48, 52-53, 60, 64, 69, 82, 86).  Armiger's argument that his speech was made in regard to the public interest fails because the language from the Amended Complaint clearly sets forth that his comments were made in the context of his role as an employee of the District and in support of his desire to be promoted. See Anderson, 239 F.3d at 1220; Bieluch, 203 Fed. Appx. at 266.  Thus, Armiger's speech was not made for the public interest as a private citizen but Armiger's own interest in seeking a promotion within the District.  As a result, Armiger's claim that his First Amendment right of free speech was infringed is denied.

### (3) Count II Defamation

The District argues that Count II should be dismissed because the Amended Complaint does not allege that the District published any statement about Armiger whether true or not, to a third party.  The District also claims that it is immune under Florida law from Armiger's slander claims.

Under Florida law, defamation consists of two separate causes of action: libel and slander. Libel is defamation expressed in print. Cooper v. Miami Herarld Pub. Co., 31 So. 2d 382, 384 (Fla. 1974). "Slander is a spoken or oral defamation of another which is published to others and which tends to damage that person's reputation, ability to conduct that person's business or profession, and which holds that person up to disgrace and

humiliation." Scott v. Busch, 907 So. 2d 662, 666 (Fla. Dist. Ct. App. 2005). In either cause of action, defamation has five elements: "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." Jews for Jesus, Inc. v. Rapp, 997 So. 2d 1098, 1106 (Fla. 2008).

Defamatory language classically includes language charging a person with a crime or tending to subject him to hatred, distrust, ridicule, contempt, or disgrace. Scobie v. Taylor, 2013 WL 3776270, at *2 (S.D. Fla. July 17, 2013) (citing Rubin v. U.S. New & World Report, Inc., 271 F.3d 1305 (11th Cir. 2001)). Additionally, defamatory language includes that which "tend[s] to injure a person in [his] office, occupation, business, or employment and which in natural and proximate consequence will necessarily cause injury," or that which "imputes to another conduct, characteristics, or a condition incompatible with the proper exercise of his lawful business, trade, profession or office." Id. (quoting Metropolis Co. v. Crosadell, 199 So. 568, 569 (Fla. 1941)) (alterations in original).  Courts have found defamation where statements were made about a person's professional competence with regard to his current employment, but not where statements were made about fitness for a potential promotion. See e.g. Glynn v. City of Kissimmee, 383 So. 2d 774, 775-76 (Fla. Dist. Ct. App. 1980); Leavitt v. Cole, 291 F. Supp. 2d 1338 (M.D. Fla. 2003); Thompson v. Orange Lake Country Club, Inc., 224 F. Supp. 2d 1368, 1381 (M.D. Fla. 2002).

Armiger states that the District repeated unprivileged false statements to a wide audience, including to employees, supervisors, members of the public and passers-by,

who were outside the "need to know basis." (Doc. #31, ¶95).  To recover for slander under Florida law, Plaintiff must allege and establish that: (1) the District published a false statement, (2) about Plaintiff, (3) to a third party, and (4) the falsity of the statement caused injury to Plaintiff. *See* Bass v. Rivera, 826 So. 2d 534, 535 (Fla. 2d DCA 2002); Scobie v. Taylor, 2013 US. Dist. LEXIS 99786 (M.D. Fla. July 17, 2013)(citing Valencia v. Cutbank Int'l, 728 So.2d 330 (Fla. 3d DCA 1999)).

As noted in the initial Order dismissing the original Complaint, the only specific statement mentioned by Armiger in the Amended Complaint was made by Deputy Chief Bengston opining that Armiger was unqualified to be a Lieutenant.  Bengston told Armiger that he was professionally incapable or incompetent. (Doc. #31, ¶24).  Like in his original Complaint, Armiger argues that the statement was made in front of third persons and passers-by but he again fails to state who those persons were, that any of those persons heard the statement, or that the statement was otherwise published.  Furthermore, the statement was not made with regard to Armiger's current employment; rather, it concerned his application for a potential promotion and therefore does not qualify as an actionable defamatory statement. Glynn, 383 So. 2d at 775-76.  As such he fails to establish that the District published a false statement against him.

Additionally, the District is immune from the alleged slander claim under Florida law.  As noted in its previous Order dismissing the claim, Florida law provides sovereign immunity to state agencies from vicarious liability for certain torts of its employees:

> The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a).  Florida courts have interpreted this Section to mean that in any situation, either the agency can be held liable or the employee, but not both. Johnson v. State Dept. of Health & Rehabilitative Servs., 695 So. 2d 927, 930 (Fla. Dist. Ct. App. 1997).

The Amended Complaint alleges multiple times that the behavior of Lombardo, Kirkland, Payne, Bengston, Intartaglio, and Laubheimer was defamatory. (Doc. #31, ¶¶16, 23, 24, 26, 27, 29, 31, 46, 60, 95, 96, and 97).  Yet, just like his original Complaint, Armiger brings his Amended Complaint against the District, a state agency, rather than the individuals who allegedly committed the alleged defamation. As noted by the Court in the original Order dismissing the case, the Florida Statute is clear that a state agency will not be vicariously liable for the malicious torts of its employees. See Fla. Stat. § 768.28(9)(a); Johnson, 695 So. 2d at 930.

In an attempt to bypass the vicarious liability prohibition in the Florida law, Armiger omits the use of the word malice from the Amended Complaint.  The Statute does not require that the specific word malice be used but that an agent or employee of the District, committed an act while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property. Fla. Stat. § 768.28(9)(a).  The issue is not whether or not Armiger used the specific word "malice" in his Amended Complaint but did the Amended Complaint state that the District's employees or agents make statements or act with malice toward Armiger.  Here Armiger alleges that Lombardo, Kirkland, Payne, Bengstrom, Intartaglio, and Laubheimer violated his civil rights, laughed at him, portrayed him as professionally incompetent, and ridiculed him professionally.

(Doc. # 31, ¶¶16, 23, 24, 26, 27, 29, 31, 46, 60, 95, 96, and 97).  Armiger's Amended Complaint alleges that the District's employees, his supervisors, acted maliciously toward him.  As such, Armiger's claim for defamation brought against the District is improper because the Florida Statute is clear that a state agency will not be vicariously liable for the malicious torts of its employees. Fla. Stat. § 768.28(9)(a); Johnson, 695 So. 2d at 930.  Consequently, Count II of the Complaint is dismissed for failure to state a claim upon which relief may be granted.

## CONCLUSION

The Court finds that the Complaint does not state a claim for relief as required by Fed. R. Civ. P. 8. See Sinaltrainal, 578 F.3d at 1268 (citing Iqbal, 129 S. Ct. at 1950). The Amended Complaint does not give the District fair notice of what Armiger's claims are, in particular with regard to Count I, nor the grounds upon which said claims rest.  As such, Count I of the Amended Complaint is due to be dismissed.    With regard to Count II, the Amended Complaint fails because the District, as a state agency, cannot be held liable under Florida law for the alleged defamation.  This is the second Complaint that Armiger has filed against the District and on both occasions he has filed essentially the same Complaint and claims.  Consequently, the Amended Complaint is due to be dismissed with prejudice.

Accordingly, it is now

**ORDERED:**

The Defendant, South Trail Fire Protection & Rescue Service District's Motion to Dismiss with Prejudice Plaintiff's Amended Complaint (Doc. #36) is **GRANTED**.  The

Amended Complaint is **DISMISSED** with prejudice.  The Clerk of the Court is directed to enter judgment accordingly, terminate any pending motions and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida this 4th day of September, 2014.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record